Date signed June 16, 2011



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DIANA CAROLINA VALLE | : | Case No. 10-27198PM |
| | : | Chapter 7 |
| Debtor | : | |
| ------------------------------- | : | |
| DIANA CAROLINA VALLE | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 10-0867PM |
| | : | |
| MONTGOMERY COUNTY, MD | : | |
| Defendant | : | |
| ------------------------------- | : | |

**MEMORANDUM OF DECISION**

Before the court are cross Motions for Summary Judgment on Plaintiff's Amended Complaint. The underlying facts of this case are not disputed, although some relevant matters do not appear to be of record. Plaintiff filed a voluntary petition in proper person under Chapter 7 on July 29, 2010.[1] Notice of Debtor's bankruptcy filing was sent to all scheduled creditors by the Bankruptcy Noticing Center on July 31 and August 1, 2010. In due course, on November 10, 2010, Debtor received a discharge. This adversary proceeding was filed the day before the

---

[1] At the time this petition was filed, the Debtor was in her third year in law school and working as a law clerk in a local office.

discharge was entered.

Debtor's schedule of claims consisted largely of student loans, but among the unsecured claims were four parking citations, three issued by the Defendant, Montgomery County, Maryland ("the County"), and one by the District of Columbia.[2] The claims listed for the Defendant totaled $130.00. As pleaded by Debtor, this case involves two parking citations that were issued on July 10, 2010, and July 13, 2010, each in the amount of $45.00. Pursuant to § 31-54(c) of the Montgomery County Code, Debtor requested a court hearing on each parking citation, and hearings were scheduled for September 20, 2010, and October 4, 2010, respectively. Debtor did not appear for either of the hearings and therefore was subject to the penalty for failure to stand trial provided by § 31-59 of the County Code. Thereafter, pursuant to MD. CODE ANN. TRANSP. § 26-303(a)(ii) (2009), the County mailed notices to Debtor, dated September 28, 2010, and October 13, 2010, respectively [Compl., Ex. B & E]. These notices advised that, because Debtor failed to appear to contest the violations, she would have to pay the amounts due to clear her record, failing which the following actions could result -- impoundment of her vehicle, denial of renewal of registration, and reporting of her delinquency to a national credit bureau (noting that this could affect her credit record). On October 4, 2010, in between the issuance of the two notices, Debtor sent a certified letter to the Defendant, advising it of the filing of her bankruptcy case under Chapter 7 on July 29, 2010 [Ex. D]. Her letter further stated, erroneously,[3] that the hearings on the parking violations were stayed by the operation of 11 U.S.C. § 362(a). She also requested that the hearings be rescheduled for a date after the entry of her discharge.

The County then sent notices of delinquent parking citations on November 1, 2010, and December 2, 2010, with respect to the July 10, 2010 violation, adding penalties of $25.00 each time [Ex. F & H].[4] The last notice sent by the County was entitled Final Notice of Delinquent Parking Citation(s) (the "Final Notice") and advised that, if the $50.00 penalty was not paid, Debtor's registration would be flagged, a flagging fee imposed, and her registration would not be renewed. On December 25, 2010, Debtor attempted to pay the $50.00 balance on the July 10,

---

[2]While these citations were listed on Schedule E, Creditors Holding Unsecured Priority Claims, no priority enumerated in 11 U.S.C. § 507(a) is applicable to unpaid parking tickets.

[3]*See* 11 U.S.C. § 362(b)(4).

[4]Debtor allegedly paid the original $45.00 fine on November 24, 2010 [Ex. G].

2010 violation, but only $25.00 was accepted by the County [Ex. I].

      Count I of the Complaint charges the County with violation of the stay of 11 U.S.C. § 362(a)(1) for attempting to collect the fines for parking violations after it received notice of the filing of the bankruptcy case.  Count II seeks to hold the County in contempt for its violation of 11 U.S.C. § 362(a)(6) in continuing its collection efforts as to the $25.00 penalty it imposed after Debtor filed for bankruptcy.  Count III seeks cancellation of the penalties assessed either in the sum of $50.00 as set forth in the Final Notice, or $25.00 as indicated on the County internet payment system, whichever is applicable, as well as the refund of the $25.00 penalty payment made December 25, 2010.

      Defendant urges that its actions are permitted under 11 U.S.C. §§ 362(b)(1) and 362(b)(4)[5] that provide exceptions from the automatic stay for continuation of criminal proceedings and the exercise of a governmental unit's police and regulatory power.  In the case at hand, the court will look first at the violation notice and next at the penalties imposed for failing to appear at the hearings requested by Debtor.  Whether one considers fines for parking violations to be essentially punishment of a criminal offense, as espoused in the opinions of the Attorney General of Maryland attached as Exhibits B-1 and B-2 to Defendant's Motion for Summary Judgment, or, as an alternative, to be the exercise of the County's police and regulatory power under 11 U.S.C. § 362(b)(4), has no effect upon the result here.  The fact is that

---

[5] **11 U.S.C. § 362.  Automatic stay**

    (b) The filing of a petition under section 301, 301, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--
        (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;
        \*        \*        \*        \*        \*
        (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

the Debtor paid the "criminal" fine for the July 10, 2010, parking violation.  At issue are the penalties imposed by the County.  The central issue of this case is the nature of the collection efforts undertaken by the County following Debtor's failure to pay the fines.  Namely, could these actions be characterized as a continuation of the criminal process?  In any event, absent local regulations that mandate that parking code violations are civil in nature, such as the Philadelphia statute described in *In re Jester*, 344 B.R. 331 (B.C. E.D. Pa. 2006)*, aff'd,* 2007 WL 781900 (E.D. Pa. March 8, 2007), the court finds that parking violations in Montgomery County, Maryland, are in the nature of criminal violations and not designed to be compensation for actual pecuniary loss.  *See Kirwan v. The Diamondback,* 721 A.2d 196, 202 (Md. 1998) (characterizing a parking ticket as a "charging document accusing the recipient of a petty crime"); *Caggiano v. Office of the Parking Clerk of the City of Boston,* 34 B.R. 449, 450 *(*BC Mass. 1983); *In re Johnson*, 2009 WL 2855812, at *1 (BC D.C. June 9, 2009).  Thus, insofar as pursuing the charges for the parking violations are concerned, the legislative history of the police and regulatory powers exception and relevant case law demonstrate that the government may impose civil penalties and fines for past conduct that violated the law.  Contrary to what some civic activists might urge, the court cannot say based upon the record in this case that, with respect to the prosecution of the parking violations, the County's underlying purpose was to further its narrow pecuniary interest.  The County's enforcement of parking regulations satisfies the test in that its actions were undertaken in the exercise of public policy and thus within the purview of its police and regulatory policy.  *See City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1124-25 (CA9 2006).

In the case of *In re Thomas*, 355 B.R. 166 (N.D. Cal. 2006), the court held that parking and traffic laws are "laws affecting health, welfare, morals and safety" and thus fall within the exception to the automatic stay:

> The legislative history of the police and regulatory powers exception and relevant case law demonstrate that the government may validly act to protect public safety, even if there is a monetary component to the government's actions. *See* H.R.Rep. No. 95–595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299 (explaining that the police and regulatory powers exception applies to suits "to prevent or stop" a harm and also to suits "attempting to fix damages for violation" of the laws). . . .
>
> Thus, the ticketing of [the debtor's] vehicle and subsequent attempts to enforce these citations and fines was an application of police and regulatory power. The Court is persuaded that Appellee's activities were not primarily for pecuniary

> purposes. The monetary fines sought by the City of San Francisco and the referral to the DMV pursuant to state law, the DMV's refusal to renew [the debtor's] vehicle registration pursuant to state law, and the subsequent perfection of a lien on [his] vehicle by the FTB were attempts by governmental units to punish past wrongs. Under the exception, governmental agencies are entitled to seek civil penalties and fines for conduct that violates the law. *In re First Alliance Mortgage Co.*, 264 B.R. 634, 649 (C.D.Cal.2001). Under the "pecuniary purpose" test, governmental action is subject to the stay only when the agency is acting to further a narrow pecuniary interest, such as seeking restitution of money wrongfully obtained from the government. *Id*. at 646. The agency is not barred when it merely attempts through the imposition of fines to punish wrongful conduct. *Id.* at 649.

*Id*. at 175-76 (footnotes omitted).

The more difficult issue concerns the penalty aspect of the case dealing with the Plaintiff's nonpayment of the fines imposed by the County after she failed to appear for the scheduled hearings.  Was this the continuation of the prosecution of the parking violations, and therefore a continuation of the criminal process, or, as described in *Williams v. Motley*, 925 F.2d 741, 744-45 (CA4 1991), a service fee to defer administrative costs?  The court finds that this action fits into the former category.

There is authority for the proposition that collection of criminal fines is subject to the automatic stay of 11 U.S.C. § 362(a) found in cases such as *Woodside v. County of Williamson, Ill.*, 161 B.R. 969, 970 (B.C. S.D. Ill. 1994), where the court held that a fine imposed against the debtor at the time of bankruptcy is a money judgment and, in seeking to collect this judgment, Williamson County violated the stay provision of 11 U.S.C. § 362(a)(2) that forbids the enforcement against the debtor of a judgment obtained before the commencement of the case. *See also In re Landstrom Distribs., Inc*., 55 B.R. 390, 392 (BC C.D. Cal. 1985) ("This court is of the view that Congress would not have used the all-inclusive language quoted above if it had intended the collection of criminal fines to continue notwithstanding the automatic stay.").

However, these two cases appear to be in the minority, and the court will follow what it believes a better reasoned line of cases that holds that the enforcement of a criminal fine is excepted from the automatic stay and that the efforts to collect the fine are a continuation of the criminal process.  In *United States v. Troxler Hosiery Co., Inc*., 41 B.R. 457 (M.D. N.C. 1984), involving a corporate debtor who had been fined $80,000 in a prepetition criminal contempt proceeding, it was stated starkly:

> This interpretation of 11 U.S.C. § 362(b)(1) is consistent with its legislative history and the practice under the former Bankruptcy Act. "The bankruptcy laws are

not a haven for criminal offenders but are designed to give relief from financial over extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R.Rep. No. 95–595, 95th Cong. 2d Sess. 343, *reprinted in* 1978 U.S. Code Cong. & Ad. News, 5787, 6299; S.Rep. No. 95–989, 95th Cong. 2d Sess. 51, *reprinted in* 1978 U.S. Cong. & Ad. News, 5787, 5837. Although it is true that a stay under the Bankruptcy Act depended on notions of provability, allowability, and dischargeability (concepts which do not concern the operation of 11 U.S.C. § 362(a)) the underlying principle of 11 U.S.C. § 362(b)(1), that bankruptcy is not a haven for criminals, was also viable under the Bankruptcy Act. *See In re Thomashefsky*, 51 F.2d 1040 (2d Cir.1983) (a contempt fine is not a dischargeable debt, consequently its collection is not stayed); *In re Koronsky*, 170 F. 719 (2d Cir.1909) (enforcement of contempt fine ordered by state court not stayed by bankruptcy); *In re Licht*, 19 F. Supp. 774 (E.D.N.Y.1937) (bankruptcy does not relieve bankrupt of punishment for contempt and perjury).

41 B .R. at 461.

In *Matter of Cuevas*, 205 B.R. 457 (BC N.J. 1997), the debtor had been convicted prepetition of numerous traffic offenses, including driving without insurance, for improper tag display, and for two offenses of driving while on the revoked list. His license was suspended and he was fined. For the second revoked list violation, he was fined again but was afforded the opportunity to pay the fine on an installment basis. When he stopped paying these installments after the filing of his bankruptcy petition, the Vineland Municipal Court issued a warrant for his arrest. In making its ruling, the court noted:

> The case of *State v. De Bonis*, 58 N.J. 182, 276 A.2d 137 (1971) is instructive on the purpose and application of N.J.S.A. 39:5–36. In *De Bonis*, the defendant pled guilty to various motor vehicle charges, including three violations of driving while on the revoked list, two charges of applying for a permit when his license had been revoked, and a charge of failing to have a driver's license in his possession. *Id*. at 185–86, 276 A.2d 137. The defendant objected to being incarcerated without having the opportunity to pay his fines in installments. In explaining the interaction between the statutes providing for specific punishments for specific offenses and the statutes providing for substituted jail terms, the New Jersey Supreme Court stressed that:
>
>> in our State a fine is intended to punish, and that imprisonment upon nonpayment, far from being a collection device, is substituted punishment designed to achieve the punitive end which the fine was imposed to achieve but failed to achieve.
>
> *Id*. at 192, 276 A.2d 137. The Court quoted from the concurring opinion in *State v. Lavelle*, 54 N.J. 315, 326–27 (1969):
>
>> Nor is it correct to say that the purpose of imprisonment for nonpayment of a fine is to "compel" its payment. Obviously that is not so. The offender is not held in custody until the fine is fully paid. On the contrary,

> the fine is liquidated by the imprisonment, and far from yielding payment, such imprisonment results in the loss to the State of both the fine and the cost of the additional confinement. The point to be remembered is that the in-lieu- of imprisonment is substituted punishment to achieve a punitive aim that could not be attained by way of a fine. The statute provides for the liquidation of a fine by time in jail precisely because the fine is intended to punish. Indeed, it would be intolerable to jail an indigent offender until the fine is paid without reduction for the period of detention, for that would smack of imprisonment for nonpayment of a debt rather than of punishment for the penal misdeed.
>
> *Id*. at 192, 276 A.2d 137. The Court reiterated that "our Legislature provided for one substituted jail time in order to further a penal objective by subjecting a defendant to one sting instead of another that failed." *Id*. at 195, 276 A.2d 137. "Again, we are not talking about the collection of a debt; the subject is punishment, and the aim is to inflict a therapeutic sting." *Id.* at 198, 276 A.2d 137. The Court recognized that it is better to "permit the imposition of a fine notwithstanding doubts as to ability to pay in installments, and then upon default, to recall the defendant for resentence in the light of the defendant's individual circumstances." *Id*. at 199, 276 A.2d 137.
>
> Applying the *DeBonis* characterization of incarceration under N.J.S.A. 39:5–36 as punishment rather than debt collection, we must conclude that the municipal court's action to incarcerate the debtor following the filing of his bankruptcy petition did not constitute a violation of 11 U.S.C. § 362(a) as an act against the debtor to collect a pre-petition claim. Rather, the debtor's incarceration represented the continuation of a criminal proceeding substituting incarceration as the penalty for debtor's earlier convictions.
>
> By this determination, we accept that motor vehicle violations may be characterized as "quasi-criminal" statutes. *See State v. Hammond*, 118 N.J. 306, 571 A.2d 942 (1990); *State v. Walten*, 241 N.J. Super. 529, 533, 575 A.2d 529 (App. Div. 1990); *Vickey v. Nessler,* 230 N.J. Super. 141, 149, 553 A.2d 34 (App. Div.), *certif. denied* 117 N.J. 74, 563 A.2d 836 (1989). A quasi-criminal statute falls within the meaning of "criminal action" as that term is used in § 362(b)(1), and its enforcement is therefore excepted from the imposition of the stay. *In re Corbo,* 117 B.R. 109, 111 (Bankr. D. N.J.1990). *See also In re Sims*, 101 B.R. 52 (Bankr. W.D. Wis.1989) (debtor's incarceration for failing to pay fine imposed in lieu of jail term was continuation of criminal action); *In re Gilliam,* 67 B.R. 83 (Bankr. M.D. Tenn.1986).

*Id.* at 460. Similarly, in the case of *In re Hardenberg v. Commonwealth of Va., Dep't of Motor Vehicles*, 1993 WL 1318606 (S.D. Ohio Sept. 10, 1993), the court on appeal dealt with the debtor's charge that the refusal of the Commonwealth of Virginia to reinstate his driving privileges prior to the payment of a pre-petition fine for driving while intoxicated violated § 362(a)(6). In affirming the bankruptcy court's holding that the action was a continuation of the criminal process and excepted from the automatic stay, the court summarized the issue and opined:

Federal courts have attempted to interpret the scope of § 362(b)(1). Numerous cases follow the approach that § 362(b)(1) does not prevent the enforcement of a criminal fine. *See*, *e.g.*, *In re Sims*, 101 B.R. 52 (Bankr. W.D. Wis. 1989) (where convicted defendant is sentenced to a monetary penalty in lieu of jail term, and then defaults, the incarceration of defendant for failure to pay the fine is a continuation of the underlying criminal proceeding within meaning of § 362(b)(1)); *United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457, 461 (D. N.C. 1984), *aff'd*, 796 F.2d 723 (4th Cir.1986) (§ 362(b)(1) "makes no distinction between sentences of imprisonment or fines and is broad enough to include enforcement of a judgment through pecuniary collection means from the debtor or property of the estate"); *In re Gilliam*, 67 B.R. 83 (Bankr. M.D. Tenn 1986) (§ 362(a) does not prevent the enforcement of a criminal fine); *134 Baker Street, Inc. v. State of Georgia*, 47 B.R. 379, 381 (N.D. Ga.1984) (§ 362(b)(1) permits state to enforce criminal sentences in the nature of money fines, notwithstanding the protective § 362(a) stay); *In re Cornell*, 44 B.R. 528 (Bankr. D. Conn.1984) (failure to maintain insurance is a type of crime within the purview of § 362(b)(1) and post petition activities to enforce a state court order of restitution as a condition of Accelerated Rehabilitation for that crime does not violate the automatic stay); *In re Mead*, 41 B.R. 838 (Bankr. D. Conn.1984) (enforcement of restitution order in the amount of $640.00 did not violate automatic stay because it is an obligation imposed by a sentencing court as part of the criminal justice process following the debtor's conviction for passing bad checks; the mere fact that victim of crime is an incidental beneficiary of restitution order imposed on criminal defendant as a condition of probation does not create a debtor-creditor relationship between the criminal and his victim because the obligation is rooted in the traditional responsibility of state protection of citizens by enforcing its criminal statutes and to rehabilitate offender); *In re Pellegrino*, 42 B.R. 129 (Bankr. D. Conn. 1984) (post petition enforcement of wage execution was integral part of criminal sentence and did not violate the automatic stay). *But see, In re Landstrom Distribs., Inc.*, 55 B.R. 390 (Bankr. C.D. Cal.1985) (the automatic stay of § 362(a) is applicable to the collection of criminal fines and prevents collection of criminal fine imposed for price fixing).

In this Court's view, the decisions which support the notion that state action aimed at the collection of criminally-imposed fines operates as an integral part of the state criminal process do not run counter to the plain meaning of and the legislative intent behind § 362(b)(1). As Judge Clark aptly reported, the legislative history to § 362(b)(1) states:

> the first exception [to the automatic stay] is of criminal proceedings against the debtor. The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978) U.S. Code Cong. & Admin. News 1978, p.6299. Accordingly, this Court is in full agreement with the Bankruptcy Judge's determination that Appellee's refusal to reinstate Appellant's driving privileges prior to the payment of his pre-petition fine and court costs debt constituted a continuation of a criminal action or proceeding against the debtor and, therefore, did not violate the automatic stay provisions of the Bankruptcy

Code.

*Id.* at *4-5.  Likewise, in *In re Pellegrino*, 42 B.R. 129, 135 (BC Conn. 1984), the court held that the state's postpetition enforcement of a wage execution order did not violate the automatic stay, reasoning that the wage execution and its enforcement throughout the probation period were integral parts of the sentence that followed the prosecution.  The court reasoned that "[t]o view the wage execution and its enforcement throughout the five-year probationary period as separate from the conviction and sentencing ... would distort reality").  *See also Troxler Hosiery*, 41 B.R. 457 at 460 (rejecting the argument that § 362(b)(1) excepts from the automatic stay a criminal prosecution against the debtor and resulting service of a prison term, but does not lift the stay for purposes of collecting money from a criminal/debtor).

*Cuevas*, *Hardenberg*, and *Troxler Hosiery* all involved far more serious matters than a parking citation.  But, inasmuch as a Montgomery County parking violation is a criminal offense, the line drawn by the automatic stay provision has been crossed.  Congress could have limited the exceptions to the automatic stay set forth in 11 U.S.C. § 362(b)(1) and (4) to violations resulting in possible incarceration, but it did not do so.  It is not for this court to draw the line as to how serious a criminal violation must be before these exceptions cross the threshold.  Here, as in *In re Thomas*, 355 B.R. 166 (N.D. Cal. 2006), a municipality seeking to enforce its parking and traffic laws prevails in its postpetition collection efforts.  There is no genuine issue of material fact.  Accordingly, the County's Motion for Summary Judgment will be granted.  An appropriate order will be entered.


cc:     Diana Carolina Valle, 2302 Hildarose Drive, Silver Spring, MD 20902
        Tamara A. Stoner, Office of the County Attorney, 101 Monroe St., 3rd Floor,
            Rockville, MD 20850


**End of Memorandum**